Thank you. My name is David Ness. I'm with the Federal Defenders of Montana and I represent Victor Fourstar. Mr. Fourstar was convicted of rape in a trial that, in a prosecution rather, that rested primarily upon the testimony of one witness, a witness that came with a great deal of baggage that created problems for the government with respect to her credibility. In an effort to try to remedy this problem, the government from the very outset presented evidence in violation of the hearsay rules, and that violation was carried through the rest of her trial through jury instructions given by the court, by the court's failure to allow rebuttal evidence with respect to attacks made upon the credibility of the defendant's witnesses, through opinion evidence introduced by the government through an FBI agent relating to the victim's demeanor, and by failure to allow other evidence such as the victim's prior burglary. The government, as I understand it, concedes that the district court committed error in allowing from the very outset evidence in violation of the hearsay rules. The government concedes that when it placed as its very first witness onto the witness stand, that being the alleged victim's sister, to testify to hearsay statements, that that, in fact, contrary to the district court's ruling, was in violation of the hearsay rules. The government, nevertheless, argues that this case should be affirmed, arguing that the error committed by the district court and the error committed by itself, by the government in introducing this evidence, was nevertheless harmless, and essentially what the government attempts to argue is that the other evidence was enough, or, in fact, was sufficient, in order for the district court to be able to determine whether or not it was in violation of the hearsay rules.  And I think that the government's decision to put the sister on the witness stand, as it were, may have been overwhelming with respect to Mr. Forestar's guilt. What evidence was there, in your view, that was untainted by the hearsay? In other words, if the sister had never said what she'd said on the stand, what's the completely independent evidence of the crime? I think it would be hard to make that link, because if you go from the fact that they placed the sister on the witness stand first to testify to the hearsay, that then served to bolster their second witness, who was, of course, the alleged victim. Then they placed the police officer on the witness stand. Well, the victim, of course, could testify about what she said happened to her, regardless. She could. But I guess my feeling is that her testimony was nevertheless tainted, simply because of the fact that the government, from the outset, essentially attempted to corroborate her testimony through her sister. So while the victim could nevertheless testify, and that evidence certainly would have come in, the victim certainly could have testified about what she believed happened to her. The way the trial was set up and the way this occurred from the very outset, her testimony was, in essence, tainted by the violation that occurred through her sister's testimony. Perhaps. It would have to have been tainted because of inconsistency? Pardon me? It would have been tainted by inconsistency? How was it tainted? How was the victim's testimony tainted by the sister's testimony? It must have been because of inconsistency, right? No. I think what I'm getting at is... Didn't the victim allege that it was nonconsensual? Did she testify that it was nonconsensual? The victim testified it was nonconsensual. That's correct. And so did the sister. And so did the sister. And I... So what was the problem? I mean, they both said the same thing. They both said the same thing, but I'm looking at it from the defense point of view. And it was tainted in that, from the very outset, the government was allowed to present evidence kind of more or less in a preemptive strike. You're saying it was improperly bolstered. It was improperly bolstered, improperly bolstered, and thereby tainted. The contamination of the tainted is what I was having trouble getting my mind around. Okay. And... Then let me ask you this. Had the first witness been the complaining witness? No. No. I'm saying... I'll assume. Had the first witness been the complaining witness, and she testified that she did not consent and that it was forceful, and then the second witness was the sister who said, she told me she hadn't consented? That would have been hearsay. It's still inadmissible. It's still an admissible hearsay, correct. But I'm having trouble understanding your point about taint. If they're both saying the same thing, I'm not sure I see where the taint is. And perhaps that was my fault in my answer to... Well, if there isn't any taint, then where's the prejudice? Well, the prejudice occurred because what happened was, is similar to the Tome case, similar to the Colicott case. What happened was the government was allowed, through not only the sister, but also through Officer Beeson, to put on evidence in violation of the hearsay rules that tended to not only place this victim's story in front of the jury on not one occasion, but at least three different occasions, but also to improperly bolster her testimony. The evidence that was testified to by her sister shouldn't have come in in any event. It was made worse by the fact that the sister was placed on the witness stand as the very first witness. You're saying that that's the – it was wrong either way. It's just in assessing the amount of prejudice, we have to look at the tactical or strategic placement of the different witnesses. That made it worse, yes. Is there any, in the record, in your view, any charge of recent fabrication that would have allowed the sister's testimony to come in later for another reason? No. I don't believe so. Given the theory of the defense, which was, I think, spelled out fairly clearly even in the opening statement, our theory was that this young girl had consensual sex with Victor Forstar. She was ashamed about it because of the family that she came from, her family being a very religious family, that disapproved of her lifestyle. And so what she did as she – when she got home and she had – and she was waiting for her family to get home, is she, in essence, concocted this story that she'd been raped. And that was where her motive to lie came in. And that motive predated any statements that she made to her sister or to any of the people that followed. So this is basically a swearing contest. She says, I didn't consent. He says, I did. And you're saying that inherently – it's inherently prejudicial to allow hearsay about what she told a whole bunch of other people where there's no exception that applies. That's correct. Yes. Yes. The government has argued that the error was harmless because the same testimony came in from two other witnesses without objection, the police officer and the doctor. If that's the case, then why wouldn't the sister's testimony be cumulative? Well, the – it's our position that the police officer's testimony, in addition, came in improperly. Was it objected to? We didn't object to it because – but we had made our objection at the very outside of the trial. We made our objection when the sister got on. And the court's ruling was unequivocal. It was clear. He said, no, this is coming in under 801D1B2. He told us it was coming in. A further objection would have been nothing but futile. The ruling you're referring to, did that pertain to the officer's testimony? That pertained to the sister's testimony. And so, just by analogy, you're saying the same ruling would have been made with regard to the officer. Is that sufficient to preserve the record? I mean, can you assume that the judge would make the same ruling for a different witness? Well, I think it necessarily had to follow because of the way that the judge ruled. The judge ruled. He said, when we made the initial hearsay objection, the court said, no, in opening statement from the outset, you have indicated that you intend to attack this victim's credibility. It's coming in under 801D1B. I don't see how any further objection to the officer's testimony would have been ruled upon any differently. And you have to also understand some of the procedural aspects of the case. Remember that the government had presented a trial memorandum discussing this issue, indicating that it may attempt to introduce this evidence, and it even cited the Tome case, the Colicotte case, which were directly on point with the hearsay objections made. And so when the court made that ruling that, no, you from the outset, even in your opening statement, intended to attack this witness's credibility, therefore, I'm letting it in through the sister, I don't know that there could have been any further objection with respect to the officer that would have been ruled upon differently. Because he had ruled that it isn't hearsay at all. He had ruled that 801D2B. Yeah, whatever. It is. It says the statement is not hearsay. So your point, I guess, is that having ruled improperly that there was a charge of recent fabrication, it necessarily followed that everything went. Everything else was going to come in. That's true. And with respect to the doctor, I think some of the evidence at least could have come in anyway under the medical exception. But certainly with Officer Beeson, the police officer, I think that that had in essence already been ruled upon. You're saying that the doctor's testimony was admissible? I think, yeah, probably in large part the doctor's testimony was. But the doctor's testimony was, I think it's fair to say, quite a bit more limited than the testimony of both the sister and the police officer. How was it limited? Pardon me? I'm sorry. How was it limited? Well, it was more limited in detail, I think. If you look at what the sister said, what Alicia said, she was allowed to testify that the victim said that Victor Forestar had raped her, that he had hit her, that it happened at the house, those sorts of details. The police officer, Shannon Beeson, said, again, it happened at the home, that he had slapped, choked her, laughed at her when he was choking at her. And some of the smaller points, but they nevertheless, I think, went to detract from the victim's credibility. What did the doctor say? Well, the doctor simply said that the victim said she'd been punched and she'd been raped. And that was, in essence, the limit of the doctor's testimony. So maybe not a stereophonic sound, but he made the same point that she claimed it was nonconsensual. Yeah. And that was admissible. That was that may very well have been admissible under the medical hearsay rule. I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Thagard. Good morning, Your Honors. My name is Joe Thagard. I represent the United States in this matter. As the Court is aware, the United States has conceded that error did occur with respect to the first issue, which is the admission of these statements. The United States does not concede, however, that if the testimony of the victim, the order of the testimony of the victim, and her sister had been reversed, that such error would have occurred. And as the United States ---- I don't think that's really the heart of the point that's being made. The Court ruled that there was a charge of recent fabrication. That's the error that the government concedes. Yes. So these statements were hearsay, were inadmissible. Not only the sisters, but the police officers as well. So where this is truly a swearing contest, one person says it was consensual, one person says it was not, and there really isn't any objective medical evidence to demonstrate one way or the other, such as, you know, damage to the victim. Why isn't that harmful error or non-harmless error to have that sort of bolstering? Well, Judge, there ---- I think the principal reason, and there are several, but I think the most significant one has to do with what Mr. Nass touched on with respect to the doctor's testimony. I think that that was admissible under the medical diagnosis statements, exception to the ---- I actually think there's a huge difference, though, between having three witnesses bolstering credibility and having one witness bolster credibility who says a lot less. You know, I don't think so, Judge, in this case, and there's a couple reasons. One is, as we've mentioned in our brief, the doctor was entirely disinterested in this matter. The doctor was a medical professional. He didn't know this woman. He wasn't of any relationship to her. There was obviously this close relationship between the victim and her sister. And, in fact, I think that the defense throughout the course of the trial made that very clear, and they attacked the sister fairly substantially on cross-examination. And we're trying to suggest that at the very least that she was biased and that perhaps she was even lying, that she may have changed some statements between the time that she gave statements to the police and the time that she testified. So in that respect, I think if you weigh the doctor's testimony against hers, he's a disinterested person against an interested person. And I certainly think that that tends to diminish the weight of her testimony. What's your response to counsel's argument that the doctor's testimony is much less vivid and dramatic and all of that? Judge, I do think it's in one sense it is and in one sense it isn't. I will say that it is not less substantial to the extent that the doctor said she told him that she was punched, that she was choked, and that she was raped. To the extent that the sister's testimony is more dramatic, I think it has to do with her description of the victim when she returned home, and not necessarily anything that she said, but what she observed about her sister and the fact that she was in this very excited state, that she was crying, that she was cheerful. And, of course, you know, those are observations. Those aren't statements. They are, but those observations without the statements could support the defendant's theory as well of feeling guilty and anxious and trying to figure out how to unwind her relationship with her family. Well, in this particular case, though, the sister did give some background on the victim and talked about her demeanor, her level of maturity, how well she knew her. And she was saying that in this occasion there was something very, very different about her. Well, some of that that you're describing doesn't sound to me like hearsay at all. And I absolutely agree. It sounds to me like it would be competent testimony for a sister to give. Absolutely, Judge. What she observed and the demeanor of the complaining witness and background of the plaintiff's makeup in life theretofore. Yes. And we hear that sort of testimony every day in court. The only thing that seems to me is the error that you have conceded was allowing her to say that the complaining witness told her that she had been raped. That's correct. And then, Judge, just to return to your question, I'd also like to address the issue about the police officer's testimony about these same statements. What's interesting there is the defense also presented testimony through another officer, Officer Tovez, which contradicted the statements to Officer Bestin. And so, you know, I think that that tends to diminish the weight of Officer Bestin's testimony. Ultimately, the doctor, in my view, in this case, was the most important witness. And I agree with Mr. Ness that under the statement for purposes of medical diagnosis, that his statement could have come in as an exception to the hearsay rule. There were other factors, however, I think, that add to the harmlessness of the error in this case. This case, in terms of physical evidence, I think is stronger than has been presented by the appellant. Although there was the implication throughout the defense that this was an act of consensual sex, the government nevertheless bore the burden of proving that sex had occurred, and we did present DNA evidence that showed that the semen found in this victim was, in fact, Mr. Forstar's. There also was the fact that she had a swollen face. Now, that is a contested issue. Mr. Forstar presented evidence which contradicted that or at least contradicted the cause of that. But there is that evidence. There's a scratch on the arm. And finally, there is the very graphic fact in this instance that this victim had a tampon shoved far into her. She was menstruating at the time that this act occurred, and, you know, the doctor described that. And that is certainly very corroborative of the victim's account of what had happened, and it's very corroborative because she said that basically once Forstar had her in this bedroom, he wouldn't let her get up to leave. And she had no chance to go even to the bathroom. And that certainly suggests that, you know, if there was a consensual act, that he would have allowed her perhaps to remove this. And so I think there is substantial physical evidence. The other thing that is significant here, and I think this goes to some of the other specified error by the defendant as well, is the fact that I think any review of the trial record in this matter shows that there was a very substantial and almost unfettered ability to question the biases and motives of the victim. She was subjected, you know, to a fairly steering cross-examination. The defense put on a number of witnesses, one of whom was her stepbrother and who called her a liar. They put on evidence that there may have been some previous relationship between her and Forstar. And so, you know, this is not a case in which they were prevented from presenting a defense. And while there was error, it was harmless. Unless the panel has other questions, I'll go ahead and take a seat. Part of what makes this hard is that the defense did put on a serious case. And to find that the error was harmless, we have to decide that it would not have made any difference. The fact that it's a closer case than sometimes we see makes that determination that much harder to reach. There's nothing in particular that you could offer up that would help us reach a conclusion that truly we can be confident that the error was harmless, that the verdict was predestined anyway. Well, again, and perhaps it's just my perspective, but, Judge, returning to the fact, there was a medical doctor who not only gave virtually the same substance of his testimony as his sister, but he corroborated these injuries. Rape cases are always difficult. This jury also had an opportunity to view the victim and to assess her testimony. And ultimately, I think it was more than just a swearing match between the victim and the perpetrator. There was physical evidence here as well as the statement to the doctor. And I think that that renders the error harmless. Counsel, may I inquire, this police officer's testimony, was he called to the scene right after the crime was committed? Yes, Judge. What happened, there was a substantial time lapse between the time that the rape occurred at the appellant's residence and the time that the victim returned home. This rape occurred early in the morning, you know, perhaps 2, 2, 3 o'clock in the morning. She doesn't get home until possibly noon the next day. So the first police officer, this officer, Sir Tovas, is the first one on scene, and then Beston arrives shortly thereafter. They arrive at the scene pretty soon after she returns home, probably within a half an hour. Did the police officer testify as to observations of her demeanor and her bodily condition? Yes, she did. She testified. I believe that she seemed a little ashamed or, words to that effect, maybe a little bit withdrawn. And so she made testimony. She gave testimony about her observations of the victim's demeanor. Well, then, if the police officer gave testimony that the witness seemed embarrassed or ashamed, is it your position that that corroborates rape or shoots rape? I think it corroborates rape. And I think it corroborates the sister's testimony, which I have characterized as being of a nonverbal or nonstatement nature, about the fact that there was something really different with her on this time. And, yes, our view is that it corroborates a claim of rape. Embarrassment and shame? Yes, Judge. Is that a natural mental reaction of a woman that's been attacked and assaulted? Is embarrassment and shame? Unfortunately, in my experience, Judge, it has been. If the panel has nothing else, I'll go ahead and resume my seat. I think we don't. Thank you. Thank you. Mr. Nass, you have some rebuttal time remaining. I think one of the things that was touched on is this was a close case, and it was a close case. It was a swearing contest, and the government's chief witness, the alleged victim in this case, came with a number of problems. She had an alcohol problem. She had mental health problems. There was evidence that she had never brought forward prior to this trial that she had been with the defendant on a prior occasion. And, in fact, she had made statements that she didn't know him, and to the extent that she even did know him, she didn't like him, didn't tell anybody. In fact, she'd spent the night with him on a prior occasion. She had a brother who testified that she was, in quotes, a liar. There were the facts involved here, facts that she was at his house. They had sex. It was supposedly a violent rape. They fell asleep. They woke up, had sex again, woke up, had breakfast. He brought her home, and depending upon which of her statements you believe, she asked him to drop her off at a place away from her house so that her parents wouldn't see her come home. As far as the physical evidence and whether or not that was enough to bring this case out of to save the government under a harmless error analysis, there's a few things that the court needs to keep in mind. One, the scratch on her arm. The doctor testified he didn't know if that was old or if it was new. She had testified that he had punched her hard in the face. The doctor testified that there was some redness, but no real bruising or anything that you would expect to see from a punch in the face. And her brother testified that her face was always red because she had gained a lot of weight and because she was a heavy drinker. Kennedy. His particular comment was that she had told me she had been punched, and I kind of assumed that because of the mark on her cheek, that's where it was. So it sounds like it's more than just redness. There's some particular mark he's referring to. But nevertheless, he didn't describe a big sort of bruise or anything of that nature. You also have to remember that by the time she had spoken to the doctor, she had spoken to her sister, she had spoken to her mother, she had spoken to Officer Tobes, and she had spoken to Officer Beeson. And so by the time she got there to speak to the doctor, she had spoken to at least four people about this incident. She, again, depending upon which of her statements you believe, she either got home at about 8 o'clock in the morning or she had gotten home at around noon. But at any rate, the testimony was she spoke to her sister, her sister called the police, Officer Tobes came over, she spoke to Officer Tobes. After Officer Tobes was there, Officer Beeson got there and she spoke to Officer Beeson, and then she was taken to the hospital. So she had told this story a number of times to a number of different people. I think it's also important to realize that neither Officer Beeson or Officer Tobes testified that they saw any signs of physical injury on the victim. Thank you. Nothing further. I see we have no further questions. Thank you very much. The arguments have been very helpful. The case just argued is submitted. We'll take a brief recess before the final case. Good morning, Doctor. All rise. Court stands to recess.
judges: Graber, Tallman, Brewster